FILED

M̶w̶B̶

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

LELAND DUANE YOUNG,

    Defendant.

No. CR 98-2017-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION IN
LIMINE**

## TABLE OF CONTENTS

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A. Protections And Waivability Of Rules 11(e)(6) And 410* . . . . . . . . . . . 5
    *B. Did Young Waive The Rules' Protections?* . . . . . . . . . . . . . . . . . . 8
        *1.*    *Counsel's conflict of interest* . . . . . . . . . . . . . . . . 8
        *2.*    *Coercion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        *3.*    *Ignorance of rights* . . . . . . . . . . . . . . . . . . . . . . . 10
            *a.*    *Burch and Krilich* . . . . . . . . . . . . . . . . . . . . . 10
            *b.*    *Eighth Circuit guidance* . . . . . . . . . . . . . . . . 15
            *c.*    *Was any waiver "knowing"?* . . . . . . . . . . . . . 17

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21



A s the Supreme Court recently observed, "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). Likewise, the provisions of the Federal Rules of Criminal Procedure are "presumptively waivable." *Id.* The question presented here is whether the defendant did indeed "knowingly and voluntarily" waive his protections under Rule 11(e)(6) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, thereby allowing the government to present at trial a self-incriminating affidavit the defendant made pursuant to a plea agreement that has since fallen apart.

## *I. INTRODUCTION*

On July 16, 1998, the United States filed an indictment charging defendant Leland Duane Young, along with others, with drug-trafficking and other offenses. Specifically, in Count I of the indictment, the United States charged Mr. Young with the crime of conspiracy to distribute methamphetamine or to possess methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 846. In Counts IV and V of the same indictment, the United States charged this defendant with separate crimes of using a "communication facility"—in this case, a telephone—in causing or facilitating the commission of the crime of conspiracy to distribute methamphetamine or to possess methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 843(b). Trial on these charges was set for September 28, 1999, then reset for October 6, 1998.

Plea negotiations ensued. On the eve of trial, on October 5, 1998, Young accepted a plea agreement under which he agreed to plead guilty to Count I of the indictment. That agreement also provided, *inter alia*, as follows:

If the defendant does breach this agreement, he faces the

2

> following consequences: (1) all testimony and other information he has provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding; (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against the defendant and to use any information obtained directly or indirectly from the defendant in those additional prosecutions; and (3) the United States will be released from any obligations, agreements or restrictions imposed upon it under this plea agreement.

Government's Exhibit 1, Hearing on Motion In Limine, October 25, 1999, Plea Agreement of October 5, 1999 (the "Plea Agreement"), ¶ 11. Pursuant to the Plea Agreement, Young also executed an affidavit that included information concerning his own and other persons' criminal activities. Government's Exhibit 2, Hearing on Motion In Limine, October 25, 1999, Affidavit of October 5, 1998 (the "Affidavit"). The government required the Affidavit, in part, to ensure that Young would not back out of the Plea Agreement after obtaining a continuance of the trial and getting a copy of the presentence investigation report.

Performance of the Plea Agreement subsequently fell apart. Therefore, on June 16, 1999, this matter was set for trial on September 27, 1999, on all three charges against Mr. Young. The trial date was later moved to November 1, 1999, then, on October 19, 1999, the trial was rescheduled to begin on October 26, 1999. On June 17, 1999, the day after the first order resetting trial was entered, the government notified defense counsel of its intent to introduce Young's Affidavit at trial. On October 19, 1999, pursuant to a Stipulated Discovery Order, the government again provided notice of its intent to use the Affidavit at trial.

On October 22, 1999, Young filed a motion in limine seeking to exclude the

3

Affidavit on the ground that it was signed during plea negotiations, and therefore was inadmissible pursuant to Rule 11(e)(6) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence. On October 21, 1999, having received a copy of Young's motion in advance of its formal filing, the government resisted the motion in limine. The government asserted that paragraph 11 of the Plea Agreement specifically authorized the government's use of the Affidavit at trial. The government argued further that the Plea Agreement constituted a valid waiver of Young's rights under Rules 11(e)(6) and 410 not to have the Affidavit admitted at trial. Specifically, the government argued that Young's decision to sign the Plea Agreement, and his execution of the accompanying Affidavit, were done "with full knowledge of the consequences should he later change his mind." Memorandum In Support Of Government's Resistance To Defendant's Motion In Limine (Government's Resistance Brief), p. 4. The government also notified the court, pursuant to a letter dated October 22, 1999, of its intention to seek an interlocutory appeal of this court's ruling on the motion in limine, should the court exclude the Affidavit.

The court held a hearing on Young's motion in limine to exclude the Affidavit on October 25, 1999. At the hearing, the United States was represented by Assistant United States Attorney Stephanie M. Rose of Cedar Rapids, Iowa. Defendant Leland Duane Young was represented by Alfredo Parrish of Parrish, Krudenier, Moss, Dunn & Montgomery, L.L.P., in Des Moines, Iowa. At the hearing, Young presented his own testimony, and the United States presented the testimony of Young's counsel at the time the Plea Agreement and Affidavit were executed. The government also submitted as exhibits the Plea Agreement and Affidavit, as well as its letter of June 19, 1999, to defense counsel concerning the government's intention to use the Affidavit at trial, letters from counsel for Young's co-defendants concerning their recollections of the plea negotiations, and the transcript of certain grand jury testimony. At the conclusion of the hearing, the

4

court continued the trial to preserve the government's right to pursue an interlocutory appeal, should the court decide to grant Young's motion in limine. Defendant's motion in limine is now ready for decision.

## II. LEGAL ANALYSIS

### A. Protections And Waivability Of Rules 11(e)(6) And 410

As the Supreme Court recently explained,

> Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6) (Rules or plea-statement Rules) are substantively identical. Rule 410 provides:
>> "Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who . . . was a participant in the plea discussions: . . . (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty. . . ."

*United States v. Mezzanatto*, 513 U.S. 196, 200 (1995). Because the Affidavit at issue here is unquestionably a "statement made in the course of plea discussions with an attorney for the prosecuting authority which d[id] not result in a plea of guilty," *see* FED. R. EVID. 410; FED. R. CRIM. P. 11(e)(6), it unquestionably falls within the general exclusion stated in the plea-statement Rules. The government argues, however, that the protections of these Rules were waived by Young's acceptance of paragraph 11 of the Plea Agreement.

The Supreme Court noted that "these Rules are subject to only two express exceptions, neither of which says anything about waiver," *id.* (footnote omitted), and

5

neither of which is pertinent here. [1] However, the Supreme Court rejected the notion that these Rules were "waiverless." *Id.* Instead, the Court found that "[t]he provisions of [the Federal Rules of Criminal Procedure] are presumptively waivable, though an express waiver clause may suggest that Congress intended to occupy the field and to preclude waiver under other, unstated circumstances." *Id.* at 201. After considering the context of these Rules, the Court declined to "interpret Congress' silence as an implicit rejection of waivability." *Id.* at 203-04. Furthermore, the Supreme Court found that, by providing circumstances in which statements made in the course of plea negotiations could be made, "the plea-statement Rules expressly contemplate a degree of party control that is consonant with the background presumption of waivability." *Id.* at 206. The Court also rejected the argument that waiver was fundamentally inconsistent with the Rules' goal of encouraging voluntary settlement, because, if prosecutors were precluded from securing plea agreements with waivers on use of statements should the agreement fall through, prosecutors "might well decline to enter into cooperation discussions in the first place and might never take this potential first step toward a plea bargain." *Id.* at 207-08. Finally, the court rejected the argument that waiver agreements should be forbidden to prevent

---

[1] The exceptions, as explained by the Court in *Mezzanatto*, are the following: [a] statement made by a criminal defendant in the course of plea discussions is "admissible (i) in any proceeding wherein another statement made in the course of the same . . . plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel." FED. R. EVID. 410. *Accord*, FED. R. CRIM. P. 11(e)(6).

*Mezzanatto*, 513 U.S. at 200 n.1. Again, neither exception is pertinent here.

6

prosecutorial overreaching and abuse, because *the dilemma of a defendant faced with acceptance of a waiver as the price of entering plea discussions* was "indistinguishable from any of a number of difficult choices that criminal defendants face every day." *Id.* at 209. The Court therefore held "that absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." *Id.* at 210.

In the case before the Court in *Mezzanatto*, the Court found that the defendant had conferred with his lawyer after the prosecutor proposed a waiver as a condition of proceeding with plea negotiations, and that the defendant "ha[d] never complained that he entered into the waiver agreement at issue unknowingly or involuntarily." *Id.* at 210-11. Therefore, the Court reversed the decision of the Ninth Circuit Court of Appeals which had been based on a *per se* rejection of waiver of the plea-statement Rules. *Id.* In contrast, in the present case, Young has indeed asserted that he did not knowingly or voluntarily waive his rights under Rules 11(e)(6) and 410, even if the protections of those rules are waivable.

7

### B. Did Young Waive The Rules' Protections?[2]

The government argues that Young waived the protections of Rules 410 and 11(e)(6), because Young's decision to sign the Plea Agreement, and his execution of the accompanying Affidavit, were done "with full knowledge of the consequences should he later change his mind." Government's Resistance Brief, p. 4. The government points out that those "consequences" include the ones detailed in paragraph 11 of the Plea Agreement, including use of Young's Affidavit at trial. Young counters that his waiver was not knowing and voluntary.

### 1. Counsel's conflict of interest

First, at the hearing on the motion in limine, Young argued that, assuming that paragraph 11 of the Plea Agreement constitutes a waiver of his right not to have his Affidavit used at trial, his counsel suffered from a conflict of interest arising from representation of a co-defendant by an attorney with whom Young's counsel shared offices. Young argues that this conflict of interest was never disclosed and therefore he never consented to representation despite the conflict. The court concludes that there is

---

[2]The parties did not address who bears the burden of proof in this situation. Although Young, as the movant in limine, would ordinarily have the burden to show that evidence is excludable, the court assumes, without deciding, that the government would bear the burden of proving that Young knowingly and voluntarily waived his rights under Rules 410 and 11(e)(6) to exclude the Affidavit. *Cf. Colorado v. Connelly*, 479 U.S. 157, 168-169 (1986) (the burden of proof is on the government to show a waiver of rights under *Miranda v. Arizona*, 384 U.S. 436 (1966)); *United States v. Boyd*, 180 F.3d 967, 977 (8th Cir. 1999) (same); *United States v. Barahona*, 990 F.2d 412, 418 (8th Cir. 1993) (the government bears the burden of proving by the preponderance of the evidence that a defendant knowingly and voluntarily waived his right to have counsel present during a custodial interrogation). The court need not decide which party bears the burden of proof, because the court finds that allocation of the burden of proof is not dispositive of the present motion.

8

insufficient evidence in the record to find any apparent or actual conflict of interest from the relationship of the two defense attorneys in this case. The two attorneys were not partners or associates in the same law firm, although they cooperated on various cases and together owned the building in which their offices were located, because they were essentially sole practitioners sharing some office facilities. *See United States v. Kindle*, 925 F.2d 272, 275 (8th Cir. 1991) ("Solo practitioners sharing office space with common staff and materials is not unusual and such an arrangement does not necessarily cause a conflict of interest when codefendants are thus represented.") (citing *United States v. Varca*, 896 F.2d 900 (5th Cir.), *cert. denied*, 498 U.S. 878 (1990)). Furthermore, there is no indication of any actual conflict of interest. *Id.* at 275-76 ("The defendant must . . . 'demonstrate an actual conflict of interest which adversely affected his attorney's performance' to obtain relief.") (quoting *United States v. Colonia*, 870 F.2d 1319, 1327 (7th Cir. 1989), and also citing *Parker v. Parratt*, 662 F.2d 479, 483-84 (8th Cir. 1981), which adopted the rule of *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980)). Nor is there any indication in the record that Young entered into a waiver of his rights against use of his Affidavit *because of* any conflict of interest, if one existed. *Id.* at 276 (finding the record inadequate to determine whether there was both an "actual conflict of interest" and "prejudice" to the defendant from an alleged conflict of interest of counsel). Therefore, the court rejects this ground as insufficient to demonstrate "some affirmative indication that the agreement was entered into unknowingly or involuntarily." *Mezzanatto*, 513 U.S. at 210.

### 2. Coercion

Young also suggested that he was coerced into accepting the Plea Agreement containing a purported waiver of Rule 410 and Rule 11(e)(6) rights, because none of the defendants, or at least none of the attorneys representing the defendants, wanted to go to

9

trial on October 6, 1998, and signing the Plea Agreement was a condition placed on the government's agreement to a continuance. Although a waiver is invalid if it results from coercion, *see, e.g., United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998) (a *Miranda* waiver is not valid if coerced), the court finds that Young has done no more than point to circumstances that are "indistinguishable from any of a number of difficult choices that criminal defendants face every day." *Mezzanatto*, 513 U.S. at 209. Thus, the court cannot find an involuntary waiver on this basis, either.

### 3. *Ignorance of rights*

The court concludes that the only arguably adequate ground for finding "some affirmative indication that the agreement was entered into unknowingly or involuntarily," *Mezzanatto*, 513 U.S. at 210, is that Young was not advised and did not know that he had any right not to have his Affidavit used at trial. Consequently, he could not have knowingly and voluntarily waived such a right. This issue requires further analysis.

#### a. *Burch and Krilich*

Although the Supreme Court's *Mezzanatto* decision establishes "that absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable," *Mezzanatto*, 513 U.S. at 210, unlike Mr. Young, the defendant in *Mezzanatto* "ha[d] never complained that he entered into the waiver agreement at issue unknowingly or involuntarily." *Id.* at 210-11. Thus, the decision in *Mezzanatto* provides little guidance on what would constitute an unknowing or involuntary waiver when the defendant specifically asserts these deficiencies in an asserted waiver. The Eighth Circuit Court of Appeals has not had occasion to consider the adequacy of a waiver of rights under Rules 410 and 11(e)(6) in the wake of the Supreme Court's recognition of the waivability of such rights in *Mezzanatto*; indeed, the parties and the court have found few such

10

decisions from any of the Circuit Courts of Appeals.

However, one instructive decision is that of the District of Columbia Circuit Court of Appeals in *United States v. Burch*, 156 F.3d 1315 (D.C. Cir. 1998), *cert. denied*, ___ U.S. ___, 119 S. Ct. 1155 (1999).[3] On the question of knowing and voluntary waiver, the court in *Burch* first noted that "*Mezzanatto* held that a trial judge must find 'some affirmative indication that the agreement was entered into unknowingly or involuntarily,'" before it could exclude evidence of plea statements subject to a waiver of rights under the

---

[3]In *Burch*, the court first found that the question before it was broader than that presented in *Mezzanatto*. *Burch*, 156 F.3d at 1320. The court noted that in *Mezzanatto*, the prosecutor had used statements made as a precondition to plea negotiations only for purposes of cross-examination of the defendant and in rebuttal after the plea negotiations faltered. *Id.* (citing *Mezzanatto*, 513 U.S. at 198-99). In contrast, in *Burch*, the district court had allowed use of plea statements in the prosecution's case-in-chief. *Id.* The appellate court in *Burch* found that it could not "discern any acceptable rationale for not extending the majority opinion in *Mezzanatto* to" cases in which the government sought to use plea statements in its case-in-chief. *Id.* at 1321. This court need not decide whether there is any discernable reason, under *Mezzanatto*, for distinguishing between a waiver of Rule 410 and Rule 11(e)(6) rights for the purpose of using a plea statement in the government's case-in-chief and a waiver for the purpose of using a plea statement in cross-examination or rebuttal, because, assuming paragraph 11 of the Plea Agreement constitutes a waiver of Rule 410 and 11(e)(6) rights, the court finds that it contains no limitation on the government's use of the Affidavit for impeachment or rebuttal purposes only; if waiver it is, it is a "complete" waiver. *See* Plea Agreement, ¶ 11 (if the agreement is violated, "all testimony and other information [Young] has provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, *may and will be used against him in any prosecution or proceeding*") (emphasis added). However, this court would observe that the terms of the waiver may specifically limit the use the government may make of the plea statement. *See, e.g., United States v. Krilich*, 159 F.3d 1020, 1024-26 (7th Cir. 1998) (considering a "conditional" waiver that by its terms permitted use of plea statements only for impeachment or rebuttal), *cert. denied*, ___ U.S. ___, 1999 WL 278904, 67 U.S.L.W. 3671, 68 U.S.L.W. 3199 (Oct. 4, 1999) (No. 98-1715).

11

plea-statement Rules. *Burch*, 156 F.3d at 1322. In *Burch*, the appellate court agreed with the district court's determination that the defendant had made a knowing and voluntary waiver of his rights under Rules 11(e)(6) and 410. *Id.* at 1323. The court noted that the defendant had "specifically . . . waived his rights under Rules 11(e)(6) and 410" in both his plea agreement and his Rule 11 colloquy with the trial judge prior to entering his plea. *Id.* at 1319. More specifically still, the appellate court noted that "[t]he trial judge also went through the specific terms of the plea agreement with appellant, including the provision in which he waived his rights under Rules 11(e)(6) and 410." *Id.* at 1323. The District of Columbia Circuit Court of Appeals therefore concluded as follows:

> The extensive colloquy conducted by the trial court clearly supports this determination that appellant knowingly and voluntarily waived his rights under Rules 11(e)(6) and 410. In no way could such a decision to permit the plea statement and the debriefings into evidence constitute an abuse of discretion.

*Burch*, 156 F.3d at 1323.

A second appellate decision that this court finds instructive is the decision of the Seventh Circuit Court of Appeals in *United States v. Krilich*, 159 F.3d 1020 (7th Cir. 1998), *cert. denied*, ___ U.S. ___, 1999 WL 278904, 67 U.S.L.W. 3671, 68 U.S.L.W. 3199 (Oct. 4, 1999) (No. 98-1715). In *Krilich*, the court relied on *Mezzanatto* for the proposition that "[s]tatements made during plea negotiations are inadmissible, . . . but a defendant may waive the right to prevent their use." *Krilich*, 159 F.3d at 1024. In *Krilich*, the court found that the defendant had signed a plea agreement containing a "conditional waiver" of rights under Rules 410 and 11(e)(6), which stated, "[S]hould [Krilich] subsequently testify contrary to the substance of the proffer or otherwise present a position inconsistent with the proffer, nothing shall prevent the government from using

12

the substance of the proffer at sentencing for any purpose, at trial for impeachment or in rebuttal testimony, or in a prosecution for perjury." *Id.* (emphasis added); *and compare* Plea Agreement, ¶ 11 (providing for use of any plea statement "in any prosecution or proceeding" if "the defendant does breach this agreement," not just in certain proceedings in certain ways if the defendant testifies contrary to the substance of the proffer). Although the defendant in *Krilich* first challenged the scope of this "conditional waiver," *id.* at 1025-1026, a challenge not made here, the *Seventh Circuit Court of Appeals* eventually focused on the issue of interest here, that is, whether the waiver was knowing and voluntary:

> Krilich insists that if the conditional waiver means what we think it means, then it is unenforceable because involuntary. *Mezzanatto* says that waivers of the plea-statement rules are unenforceable if given "unknowingly or involuntarily" (513 U.S. at 210, 115 S. Ct. 797), but this is a far cry from saying that waivers mean whatever the defendants say they understood them to mean; no party to a contract has Humpty Dumpty's power over language either directly or through the gambit that unanticipated consequences render the agreement "involuntary." A waiver is voluntary in the absence of coercion, *Colorado v. Connelly*, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *United States v. Brooks*, 125 F.3d 484, 492 (7th Cir. 1997), and is knowing if made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). Krilich does not contend that his assent was coerced and offers no support for a conclusion that he didn't understand the rights that Rules 410 and 11(e)(6) confer. A defendant's understanding of the consequences of his waiver need not be perfect; it was Krilich's understanding of the rights being relinquished, not of all possible repercussions of relinquishing them, that made his

13

> waiver knowing. *See Colorado v. Spring*, 479 U.S. 564, 107
> S. Ct. 851, 93 L. Ed. 2d 954 (1987).

*Krilich*, 159 F.3d at 1026. Thus, the standard of "knowing" waiver stated by the Seventh Circuit Court of Appeals in *Krilich* requires awareness of two distinct things: (1) the nature of the right being abandoned, and (2) the consequences of the decision to abandon it.

This court observes that, although the consequences of the "conditional waiver" of Rule 410 and Rule 11(e)(6) rights is spelled out clearly in the waiver provision in *Krilich*, *see id.* at 1024 (consequences specified for testifying contrary to the proffer were "using the substance of the proffer at sentencing for any purpose, at trial for impeachment or in rebuttal testimony, or in a prosecution for perjury"), it is less clear from whence came the defendant's supposed "awareness of . . . the nature of the right being abandoned." *Id.* at 1026 (a waiver "is knowing if made 'with a full awareness of *both* the *nature of the right* being abandoned *and* the *consequences* of the decision to abandon it.'") (quoting *Moran*, 475 U.S. at 421, with emphasis added by this court). Certainly, this court sees nothing in the quoted language of the purported waiver in *Krilich* that indicated to the defendant that he had the right not to have his plea statements used at all, absent the agreement to certain consequences for contrary testimony. *See id.* at 1024. Such knowledge is, perhaps, suggested by the court's finding that "[t]he prosecutor wanted to give Krilich an incentive to tell the truth; Krilich wanted assurance that he could defend himself at trial if bargaining collapsed (for otherwise he was delivering himself into the prosecutor's hands)." *Id.* at 1025. However, it is just as plausible that the defendant's awareness of the nature of his "right" not to have plea statements used at trial appeared to the defendant to arise *from the agreement itself*, which established limited circumstances triggering the government's ability to use the plea statements, not from some right he had in the absence

14

of any agreement with the government, which is the "default" situation established by Rules 410 and 11(e)(6). To the extent that the *Krilich* decision can be read to hold that knowledge of consequences of a purported waiver is sufficient to establish knowledge of the nature of rights being abandoned, this court must respectfully disagree.

### b.    *Eighth Circuit guidance*

Although the Eighth Circuit Court of Appeals has not had occasion to provide guidance on what is required to waive rights under Rules 11(e)(6) and 410, it has nonetheless provided guidance on what constitutes a knowing and voluntary waiver in a variety of contexts. For example, in *United States v. Turner*, 157 F.3d 552 (8th Cir. 1998), the court reiterated the requirements of the "two distinct dimensions" of "knowledge" and "voluntariness" as they pertained to a *Miranda* waiver:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Turner*, 157 F.3d at 555 (quoting *United States v. Jones*, 23 F.3d 1307, 1313 (8th Cir. 1994), in turn quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). The requirements for a "knowing" waiver of *Miranda* rights stated in *Turner* thus parallel the requirements identified by the Seventh Circuit Court of Appeals for a "knowing" waiver of rights under Rules 410 and 11(e)(6). *See Krilich*, 159 F.3d at 1026 (a waiver "is knowing if made 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'") (also quoting *Moran*, 475 U.S. at 421).

More importantly, it appears to this court to be a theme of recent decisions of the Eighth Circuit Court of Appeals involving waiver of rights by a criminal defendant that the

15

defendant must not only know the consequences of his or her purported waiver of rights, but *know or be informed of the specific rights being waived*, that is, be shown to have a "full awareness . . . of the nature of the right being abandoned." *Turner*, 157 F.3d at 555 (quoting *Jones*, 23 F.3d at 1313, in turn quoting *Moran*, 475 U.S. at 421). For example, in *United States v. Smith*, 171 F.3d 617 (8th Cir. 1999), the Eighth Circuit Court of Appeals found a knowing waiver of a right to counsel where the defendant's written waiver of a right to counsel was "coupled with his prior invocation of his right to appointed counsel." *Smith*, 171 F.3d at 622. Similarly, in *United States v. Morrison*, 171 F.3d 567 (8th Cir. 1999), the Eighth Circuit Court of Appeals found that a waiver of appeal rights was effective where the language of the written waiver was clear that the defendant otherwise had a right to appeal and specifically stated that the defendant was waiving that right, the waiver of appeal rights was brought to the defendant's attention by the court at the plea hearing, and the defendant "said he understood he was waiving 'valuable rights of appeal.'" *Morrison*, 171 F.3d at 568. The dual requirements for a knowing waiver, knowledge of the right and knowledge of the consequences of abandoning it, are also apparent in the Federal Rule of Criminal Procedure governing acceptance of a guilty plea. *See* FED. R. CRIM. P. 11(c) (requiring the court to advise a criminal defendant not only of the consequences of pleading guilty, but of the existence of the specific rights being given up by entering such a plea). Similar requirements for a knowing waiver of the rights of a criminal defendant have been applied in other circumstances. *See United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir. 1999) ("Because a guilty plea constitutes a waiver of three constitutional rights—the right to jury trial, the right to confront one's accusers, and the privilege against self-incrimination—it must be made 'with sufficient awareness of the relevant circumstances and likely consequences.'") (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *Ivy v. Caspari*, 173 F.3d 1136, 1141-42 (8th

16

Cir. 1999) ("A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."); *United States v. Blum*, 65 F.3d 1436, 1444 (8th Cir. 1995) (the defendant knowingly and voluntarily waived her right to testify where her knowledge that she had the right to testify was demonstrated by her belated attempt to assert the right), *cert. denied*, 516 U.S. 1097 (1996).[4]

### c.     *Was any waiver "knowing"?*

The court now turns to the question of whether Young made a knowing waiver of his rights under the plea-statement Rules in light of these precedents. In this case, unlike the situation in *Burch*, there is no indication that Young "specifically . . . waived his rights under Rules 11(e)(6) and 410," *Burch*, 156 F.3d at 1319, and no indication that *anyone* "went through the specific terms of the plea agreement with [Young] . . . waiv[ing] his rights under Rules 11(e)(6) and 410." *Id.* at 1323. If waiver it is, paragraph 11 of the Plea Agreement does not identify "rights under Rules 11(e)(6) and 410," or even "rights against use of plea statements," and there is no affirmative statement that Young is "waiving" such rights. *See* Plea Agreement, ¶ 11. The testimony of Young's former counsel does not indicate that he ever went through the specific terms of the Plea Agreement that would have effectively eliminated Young's rights under Rules 11(e)(6) and 410, or that counsel ever explained to Young that he otherwise had such rights, but was

---

[4] Indeed, comparable requirements have also been applied in the civil context. *See, e.g., Haghighi v. Russian-American Broadcasting Co.*, 173 F.3d 1086, 1088 (8th Cir. 1999) (considering waiver of provisions of the Minnesota Civil Mediation Act, which provide that, to be enforceable, a settlement agreement must state that it is binding, the court observed that "Waiver requires evidence of a voluntary and intentional relinquishment or abandonment of a known right").

17

waiving them by agreeing to the government's use of plea statements if he backed out of the plea agreement. At most, counsel apparently told Young that if he signed the Plea Agreement, it was a "done deal" and the Affidavit could be used against him at trial if Young backed out of the deal. This does not suffice to advise Young of the nature of rights at issue and the consequences of giving up such rights. *Compare Burch*, 156 F.3d at 1323 (the defendant's plea agreement specifically waived his rights under Rules 11(e)(6) and 410).

Furthermore, in light of *Krilich* and decisions of the Eighth Circuit Court of Appeals requiring both awareness of the nature of rights and consequences of waiving them, *see Krilich*, 159 F.3d at 1026; *Smith*, 171 F.3d at 622; *Morrison*, 171 F.3d at 568; *Turner*, 157 F.3d at 555, the court finds no such knowing waiver in this case. Here, the court finds that the purported waiver of Rule 410 and Rule 11(e)(6) rights in paragraph 11 of the Plea Agreement, at best, expressly states only the *consequences* of the waiver: It clearly provides that, if Young breached the Plea Agreement, "all testimony and other information he has provided at any time to attorneys, employees or law enforcement officers of the government, to the court, or to the federal grand jury, may and will be used against him in any prosecution or proceeding." Plea Agreement, ¶ 11. However, as to the second prong of the "knowing waiver" inquiry, the court finds no such clear delineation in the Plea Agreement of the *nature* of the rights being abandoned. *See Moran*, 475 U.S. at 421 (knowing waiver requires knowledge of the nature of rights and the consequences of abandoning them). The government relies on the portion of the Plea Agreement stating that Young "acknowledges that he has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions," Plea Agreement, ¶ 15, as establishing that Young knew he was waiving rights not to have plea statements used against him. This reliance is misplaced, because nowhere does the

18

Plea Agreement inform Young that he has a right, absent the agreement, not to have any of his plea statements used against him in any way and there is no evidence that Young's counsel informed Young of such a right.

Indeed, the government concedes as much, relying instead on Young's knowledge of the consequences of backing out of the Plea Agreement, as stated in paragraph 11 of the Agreement, as providing sufficient evidence of a knowing waiver. The court does not believe the two prongs of a knowing waiver—knowledge of the nature of rights waived and the consequences of waiving them—can be conflated in this way, at least not in the circumstances presented here. A defendant cannot "knowingly" waive rights unless he in fact "knows" he or she has such rights in the first place. The court agrees with the government that it is not necessary to an effective waiver for the *source* of rights to be identified—that is, it was not necessary to state that Young was "waiving rights *under Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure* against use of plea statements." Such a disclosure would undoubtedly have been sufficient for a knowing waiver of the plea-statement Rules, and is consequently preferred, but the requirement is that the defendant know the *nature* of the rights at issue, not that he or she know the *source* of the rights. *See, e.g., Turner,* 157 F.3d at 555 (stating both requirements for a knowing waiver, citing *Moran,* 475 U.S. at 421). However, the court finds that it was necessary for Young to be advised of the *existence* of a right not to have plea statements used in a subsequent trial or other proceeding, either in the Plea Agreement, by his counsel, or by the government, to obtain an effective waiver of that right.[5]

---

[5]For example, the familiar *Miranda* warning is sufficient where it notifies the arrestee of his or her "right to remain silent" and what will happen if he or she gives up

(continued...)

19

The ineffectiveness of the purported waiver of Young's plea statement rights is perhaps highlighted by the fact that, in every other portion of the Plea Agreement that purportedly waives some of Young's rights, the Plea Agreement specifically delineates the right and expressly states that Young is "waiving" the right or will be "deprived" of the right by entering into the Plea Agreement. Taking these instances in the order in which they appear, the court finds that in paragraph 12 of the Plea Agreement, Young expressly "waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment to the Constitution." Plea Agreement, ¶ 12. Again, in paragraph 13, the Plea Agreement states that "[t]he defendant waives all constitutional and statutory speedy trial rights he may have [and] also waives all statute of limitations or other objections or defenses he may have related to the timing or timeliness of the filing or prosecution of charges referred to in this paragraph." *Id.* at ¶ 13. These express waivers, like the purported waiver of plea statement rights in paragraph 11, appear in a section captioned "GENERAL MATTERS." Other express waivers are stated in a section denominated "ACKNOWLEDGMENT OF DEFENDANT'S UNDERSTANDING." Paragraph 15, which reflects the requirements of FED. R. CRIM. P. 11(c), states that "[t]he defendant understands that by entering a plea of guilty he will be giving up his right to plead not guilty; to trial by jury; to confront, cross-examine and compel attendance of witnesses; to present evidence in his defense; to remain silent and refuse to be a witness against himself by asserting his privilege against self-incrimination and to be presumed innocent until proven guilty beyond a reasonable doubt." *Id.* at ¶ 15. Similarly, paragraph 17 specifically notifies the defendant that

---

[5](...continued)
that right, even though the source of the "right to remain silent" is not identified.

20

pleading guilty deprives him of certain, specific rights, including "the right to vote, to hold public office, to serve on a jury and to possess firearms." *Id.* at 17.

These provisions demonstrate that the government knows how to draft an effective waiver of rights that shows that the defendant knew both the *nature* of the rights at issue and the *consequences* of waiving them. *See Turner*, 157 F.3d at 555 (stating both requirements for a knowing waiver, citing *Moran*, 475 U.S. at 421). Perhaps more importantly, each of these waivers expressly satisfies both prongs of the "knowing" requirement, because each notifies the defendant of the *nature* of the right at issue and the *consequences* of waiving that right. Paragraph 11 of the Plea Agreement stands in stark contrast, because it does not meet both prongs of the "knowing" requirement and no other source for Young's knowledge of the nature of the rights being waived has been proved in this case.

### III. CONCLUSION

There is no evidence in the record in this case from which the court could find that Young was aware of the nature of his rights with regard to plea statements. Therefore, there is some affirmative indication that Young's waiver of his rights under Rules 410 and 11(e)(6) the agreement was entered into "unknowingly." *Mezzanatto*, 513 U.S. at 210. In the absence of such a waiver, Young's motion in limine is **granted**, and the Affidavit must be, and hereby is, **excluded** pursuant to the plea-statement Rules.

**IT IS SO ORDERED.**

**DATED** this 29th day of October, 1999.

_Mark W. Bennett_

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE

Copies mailed on _10/29/99_
to counsel of record or pro se
parties as shown on the docket
sheet

21