## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LELAND DUANE YOUNG,<br><br>    Defendant. | No. CR98-2017-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Standards For Relief Pursuant To § 2255* . . . . . . . . . . . . . . . . . . . 3
    *B. Ineffective Assistance Of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . 6
        *1. Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        *2. Claims of ineffective assistance at issue here* . . . . . . . . . . . 8
            *a. Stipulation of drug quantity* . . . . . . . . . . . . . . . . . . 8
            *b. Booker Claims* . . . . . . . . . . . . . . . . . . . . . . . . . 12
            *c. Venue in the Northern District of Iowa* . . . . . . . . . 13
    *C. Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION AND BACKGROUND

In an indictment returned on July 16, 1998, defendant Leland Duane Young was charged with conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846, and using a communication facility to facilitate the commission of a drug trafficking crime, in violation of 21 U.S.C. § 843(b). On October 5, 1998, defendant Young signed a written plea agreement and a notarized affidavit in which he admitted to each element of the charged offenses. Defendant Young was allowed to remain free on bond pending the plea and sentencing hearing. A combined plea and sentencing hearing was scheduled for January 21, 1999. Prior to that date, however, defendant Young absconded from pre-trial supervision and an arrest warrant was issued for him. On December 19, 1999, a superseding indictment was returned against defendant Young which added a charge of failure to appear, in violation of 21 U.S.C. §§ 3146 and 3147. On May 7, 1999, defendant Young was arrested in Omaha, Nebraska, and transferred back to the Northern District of Iowa for trial.[1] Following an interlocutory appeal regarding the government's use of defendant Young's affidavit admitting the elements of crimes charged, *see United States v. Young*, 223 F.3d 905, 911 (8th Cir. 2000), *cert. denied*, 121 S. Ct. 1133 (2001) (finding that although affidavit was a statement made in the course of plea negotiations it was admissible as a knowing and intelligent waiver of defendant's rights), defendant Young pleaded guilty to Count 1 of the superseding indictment, conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. On October 30, 2001, defendant Young was sentenced to 188 months imprisonment.

---

[1] Upon his return, defendant Young secured new legal counsel, Alfredo Parrish.

Defendant Young then filed a timely appeal of his sentence. On appeal, defendant Young asserted that the court erred when it assessed him a two-level increase for obstruction of justice. *See United States v. Young*, 315 F.3d 911, 913 (8th Cir.), *cert. denied*, 538 U.S. 1044 (2003). He also argued that the court erred when it declined to grant him a three-level reduction for acceptance of responsibility. *Id.* Defendant Young also argued that the court erred when it declined to depart downward in his sentence based on his pre-sentence confinement, his health, or his age. *Id.* Finally, defendant Young asserted that the court was incorrect when it declined to depart downward based on his claims of ineffective assistance of counsel. Defendant Young's appeal was denied. *See id.* at 915.

Pursuant to 28 U.S.C. § 2255, defendant Young filed his Motion To Vacate, Set Aside Or Correct Sentence which is presently before the court. Defendant Young raises the following claims in his § 2255 motion: (1) that his second attorney, Alfredo Parrish, was ineffective in erroneously advising him to stipulate to a drug quantity which defendant Young contends was not supported by the evidence; (2) that Parrish was ineffective in failing to preserve defendant Young's right to argue errors under the United States Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005); and, (3) that Parrish was ineffective in failing to move for dismissal of the case based on alleged venue defects.

## II. LEGAL ANALYSIS
### A. *Standards For Relief Pursuant To § 2255*

The court must first consider the standards applicable to a motion for relief from sentence pursuant to 28 U.S.C. § 2255. Section 2255 of Title 28 of the United States Code provides as follows:

3

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*). On the other hand,

> Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

4

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1346 (2006). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, a "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'"), *cert.*

5

*denied*, 126 S. Ct. 2341 (2006) (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)). However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

### B. *Ineffective Assistance Of Counsel*

The underlying merits of defendant Young's claims lie in whether defendant Young can demonstrate ineffective assistance of his counsel. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." *U.S. Const. amend*. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Therefore, the court will address defendant Young's specific claims after briefly reviewing the standards for a claim of ineffective assistance of counsel.

6

### 1. Applicable standards

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *Ledezma-Rodriguez*, 423 F.3d at 836 (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable

7

professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was deficient, the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997)). The court will now consider defendant Young's specific claims of ineffective assistance of counsel.

### 2. *Claims of ineffective assistance at issue here*
#### a. *Stipulation of drug quantity*

Defendant Young contends that his counsel was ineffective in erroneously advising him to stipulate to a drug quantity, at least one kilogram of methamphetamine, which defendant Young contends was not supported by the evidence. Under Eighth Circuit precedent, a district court is permitted to accept as true all factual allegations contained in a presentence report that are not specifically objected to by the parties. *United States v.*

8

*Townsend*, 408 F.3d 1020, 1021 n.2 (8th Cir. 2005); *United States v. Allen*, 75 F.3d 439, 442 (8th Cir. 1996); *United States v. Beatty*, 9 F.3d 686, 690 (8th Cir. 1993). A review of those facts from defendant Young's 1999 Presentence Investigation Report ("1999 PSIR") which were not objected to by defendant Young shows defendant Young's involvement in a criminal conspiracy to distribute well over 1,000 grams of methamphetamine. In the fall of 1993, three controlled purchases of methamphetamine were made by Iowa Division of Narcotics Special Agent Sean McCullough from Becky Tix. 1999 PSIR at ¶ 22. Subsequently, Tix was approached by law enforcement officers and agreed to cooperate. *Id*. Tix identified Daryl Waters as her source for methamphetamine. In addition, Tix identified defendant Young, along with Ann Young and William Gainer as being Waters's methamphetamine suppliers. *Id*. Tix stated that she had accompanied Waters to Marshalltown, Iowa, to pick up methamphetamine from one or more of these individuals. *Id*.

Tix testified before the grand jury that Waters obtained two to three ounces of methamphetamine from his suppliers in Des Moines, Iowa, defendant Young and Ann Young. *Id.* at ¶ 23. In approximately September or October 1991, Tix became involved in delivering methamphetamine to various customers of Waters. In approximately January 1992, Tix began accompanying Waters to Marshalltown where Waters met his Des Moines suppliers of methamphetamine, picking up two to three ounces of methamphetamine each time. *Id*. Beginning in August or September 1992, Tix began to make trips alone to Marshalltown on Waters's behalf to pick up methamphetamine. *Id*. Tix testified that she made approximately five trips, picking up two to three ounces of methamphetamine each time, for a total of ten ounces. *Id*. Tix stated that she dropped off two ounces to one particular customer of Waters on of behalf Waters, and that on another occasion, she observed Waters drop off three ounces of methamphetamine to this same customer. *Id*.

9

Tix believed that the methamphetamine picked up was cut approximately twenty percent with Inositol. *Id.* at ¶ 24. Tix stated that Waters was paying $1,200 per ounce for the methamphetamine but was charging his customers $1,800 per ounce. *Id.*

In the spring and early summer of 1993, three controlled buys of methamphetamine were made from Waters. *Id.* at ¶ 25. Information concerning Waters's drug trafficking activities were used to obtain a Title III wiretap for Waters's telephone at his residence in Evansdale, Iowa. *Id.* at ¶ 26. A number of telephone calls were overheard during which incriminating conversations concerning drug trafficking occurred. *Id.* These calls each involved defendant Young, Ann Young, and Gainer discussing or making arrangements to sell methamphetamine to Waters. *Id.*

On July 17, 1993, law enforcement officers overheard Waters making plans to meet Ann Young at the Perkins Restaurant in Marshalltown, Iowa to obtain methamphetamine. *Id.* at ¶ 27. Law enforcement officers conducted surveillance during which they observed Waters meet with Ann Young. *Id.* Waters subsequently confirmed that he obtained methamphetamine from Ann Young during this meeting. *Id.*

On August 2, 1993, while the wiretap was still in place, law enforcement officers approached Waters and asked him to cooperate with them. *Id.* at ¶ 28. Waters confirmed that defendant Young, Ann Young and Gainer were his suppliers of methamphetamine. *Id.* Waters told law enforcement officers that he had obtained methamphetamine from defendant Young and Ann Young during the period of 1983 through 1993. *Id.* at ¶ 29. Waters initially used the methamphetamine he obtained from defendant Young and Ann Young but, commencing in approximately March 1990, Waters began to purchase resale amounts of methamphetamine. *Id.* Initially, Waters obtained .25 to .50 ounces of methamphetamine to use and to sell to two primary customers. *Id.* at ¶ 30. Then, beginning in the summer of 1991, Waters began obtaining three ounces of

10

methamphetamine at a time from defendant Young, Ann Young, and Gainer. *Id.* at ¶ 31. Waters obtained methamphetamine from defendant Young, Ann Young, and Gainer once per week. *Id.* On one or two occasions, Waters obtained three ounces of methamphetamine twice in the same week. *Id.* Defendant Young, Ann Young, and Gainer refused to sell more than three ounces at a time to Waters because, as they told Waters, anything more than three ounces at a time made it "federal." *Id.*

In addition, defendant Young's 2001 Presentence Investigation Report ("2001 PSIR") indicates that he stipulated in his plea agreement to the following:

> Between about 1990 and 1993 defendant had an agreement or understanding with Ann Young, William Gainer, Daryl Waters and others to distribute and possess with intent to distribute methamphetamine.
> . . .
> Defendant and his co-conspirators generally sold Waters up to three ounces of methamphetamine at a time. The defendant understood that at least some of this methamphetamine was transported back to the Waterloo, Iowa, area and sold by Daryl Waters.

2001 PSIR at ¶¶ 29, 32.

As a member of a criminal conspiracy, defendant Young was responsible not only for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or wilfully caused" by him, U.S.S.G. § 1B1.3(a)(1)(A), but also for all "'reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.'" *United States v Cordova*, 157 F.3d 587, 599 (8th Cir. 1998) (quoting U.S.S.G. § 1B1.3(a)(1)(B)). So long as the activities of defendant Young's co-conspirators were part of the same course of conduct or common scheme or plan, those activities may be attributed to him for sentencing purposes. *See United States v. Spence*, 125 F.3d 1192, 1195 (8th Cir. 1997). Because Waters's information established a

11

conspiracy, in which defendant Young was an active member and in which over eight kilograms of methamphetamine was distributed, defendant Young's counsel's advising him to stipulate to a drug quantity far less, at least one kilogram of methamphetamine, was clearly neither deficient performance nor was it prejudicial to defendant Young. Therefore, this portion of defendant Young's § 2255 motion is denied.

### b. *Booker Claims*

Defendant Young next contends that his counsel was ineffective in failing to preserve alleged errors under *United States v. Booker*, 543 U.S. 220 (2005). Because the United States Supreme Court's decision in *Booker* had not been decided at the time of defendant Young's guilty plea, his counsel could not be expected to be clairvoyant and make divinations about the future state of the law. Federal courts have rejected ineffective assistance claims predicated on counsel's failure to predict passage of future law because "[c]lairvoyance is not a required attribute of effective representation." *United States v. Gonzalez-Lerma*, 71 F.3d 1537, 1541-42 (10th Cir. 1995). There is a distinction between "the failure of an attorney to be aware of prior controlling precedent--which might render counsel's assistance ineffective--from the failure of an attorney to foresee future developments in the law." *Id.* at 1542. Moreover, because this case was not pending on direct review when *Booker* was decided, defendant Young's counsel's failure to preserve alleged errors under *Booker* did not prejudice defendant Young. This is because every federal court of appeals, including the Eighth Circuit Court of Appeals, to have considered the issue of retroactivity, has held that *Booker* does not apply retroactively to cases on collateral review. *See United States v. Hernandez*, 436 F.3d 851, 855 (8th Cir.), *cert. denied*, 126 S. Ct. 2341 (2006); *Never Misses A Shot v. United States*, 413 F.3d at 781, 783 (8th Cir. 2005); *see also In re Zambrano*, 433 F.3d 886, 889 (D.C. Cir. 2006); *United States v. Gentry*, 432 F.3d 600, 606 (5th Cir. 2005); *United States v. Morris*, 429

12

F.3d 65, 72 (4th Cir. 2005), *cert. denied*, 127 S. Ct. 121 (2006); *United States v. Bellamy*, 411 F.3d 1182, 1188 (10th Cir. 2005); *In re Elwood*, 408 F.3d 211, 212 (5th Cir. 2005); *Lloyd v. United States*, 407 F.3d 608, 615-16 (3rd Cir. 2005); *Guzman v. United States*, 404 F.3d 139, 143-44 (2d Cir. 2005); *In re Olopade*, 403 F.3d 159, 164 (3rd Cir. 2005); *Varela v. United States*, 400 F.3d 864, 868 (11th Cir.2005); *United States v. Price*, 400 F.3d 844, 845 (10th Cir. 2005); *Bey v. United States*, 399 F.3d 1266, 1269 (10th Cir. 2005); *Humphress v. United States*, 398 F.3d 855, 857 (6th Cir. 2005); *Green v. United States*, 397 F.3d 101, 103 (2d Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *In re Anderson*, 396 F.3d 1336, 1339-40 (11th Cir. 2005). Therefore, this portion of defendant Young's motion is also denied.

### *c.* *Venue in the Northern District of Iowa*

Defendant Young also contends that his counsel was ineffective in failing to challenge venue in the Northern District of Iowa. Defendant Young points out that most of the transactions identified by Waters and Tix occurred in Marshalltown, Iowa, which is in the Southern District of Iowa. He extrapolates from this that his counsel was ineffective in failing to challenge the correctness of venue in the Northern District of Iowa. This view of venue, however, fails to take into account clear Eighth Circuit Court of Appeals's precedent which holds that:

> A violation of federal law may be prosecuted "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). "Furthermore, although separate proof of an overt act is not a necessary element of a drug conspiracy under 21 U.S.C. § 846, venue is proper in a conspiracy case in any jurisdiction in which an overt act in furtherance of the conspiracy was committed by any of the conspirators." *Romero*, 150 F.3d at 824 (citations and internal quotations omitted).

13

*United States v. Morales*, 445 F.3d 1081, 1084 (8th Cir. 2006); *accord United States v. Johnson*, 462 F.3d 815, 819 (8th Cir. 2006); *United States v. Romero*, 150 F.3d 821, 824 (8th Cir. 1998); *United States v. Bascope-Zurita*, 68 F.3d 1057, 1062 (8th Cir. 1995); *United States v. Bonadonna*, 775 F.2d 949, 955 (8th Cir. 1985). Here, defendant Young stipulated that co-conspirator Waters, in furtherance of the conspiracy, traveled to Waterloo in order to distribute methamphetamine. Because this overt act took place within the Northern District of Iowa, venue is proper here. Therefore, this portion of defendant Young's motion is also denied.

### C. Certificate Of Appealability

Defendant Young must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 123 S. Ct. at 1040 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court determines that defendant Young's petition does not present questions of substance for appellate review, and therefore, does

not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). With respect to defendant Young's claims, the court shall not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

### III. CONCLUSION

Defendant Young's § 2255 motion is **denied**, and this matter is **dismissed in its entirety**. Moreover, the court determines that the petition does not present questions of substance for appellate review. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, a certificate of appealability will not issue.

**IT IS SO ORDERED.**

**DATED** this 19th day of August, 2007.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA